**Electronically Filed
Intermediate Court of Appeals
28378
18-FEB-2011
08:14 AM**

NO. 28378

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

PROBATE NO. 6664
IN THE MATTER OF THE ESTATE
OF
SAMUEL M. DAMON, Deceased

and

EQUITY NO. 2816-A
TRUST CREATED UNDER THE WILL
OF
SAMUEL M. DAMON, Deceased

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT

MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Fujise, JJ.)

Respondent-Appellant Christopher Damon Haig (Haig) appeals from (1) the "Judgment on Order Granting Petition for Approval of 2005 Income and Principal Accounts and Trust Termination Status Report" (Judgment) filed on September 27, 2006 in the Circuit Court of the First Circuit[1] (probate court) and (2) the deemed denial, pursuant to Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 4(a)(3), of Haig's October 9, 2006

_____

[1] The Honorable Colleen K. Hirai presided.

"Petition for Reconsideration of and Relief from: 1) Order Granting Petition for Approval of 2005 Income and Principal Accounts and Trust Termination Status Report, filed on 27 Sep 2006 and 2) Judgment on Order Granting Petition for Approval of 2005 Income and Principal Accounts and Trust Termination Status Report, filed 27 Sep 2006 and 3) Notice of Entry of Judgment on Order Granting Petition for Approval of 2005 Income and Principal Accounts and Trust Termination Status Report, filed on 28 Sep 2006" (Petition for Reconsideration) on January 8, 2007 by the probate court's failure to enter a timely written order.

In its September 27, 2006 "Order Granting Petition for Approval of 2005 Income and Principal Accounts and Trust Termination Status Report" (Order Granting Petition), the probate court granted the "Petition for Approval of 2005 Income and Principal Accounts and Trust Termination Status Report" (Petition) filed on May 12, 2006 by Petitioners-Appellees David M. Haig, Fred C. Weyand, Paul Mullin Ganley, and Walter A. Dods, Jr., as the Trustees under the Will and of the Estate of Samuel Mills Damon, Deceased (collectively, Trustees).

On appeal, Haig contends the probate court erred by (1) approving the 2005 Income and Principal Accounts and Trust Termination Status Report (2005 Report), (2) instructing the Trustees to distribute to Haig monies held in an FBO account,[2] and (3) denying Haig's Petition for Reconsideration.

## I.  BACKGROUND

Haig challenges the probate court's approval of the 2005 Report submitted to the court by the Trustees of the testamentary trust established by Haig's great-grandfather, Samuel Mills Damon (the Trust).

_____

[2]  In Haig's points of order, he incorrectly refers to the account as an "FDO Account." In the Order Granting Petition, the probate court refers to an "FBO Account" (FBO is the abbreviation for "for the benefit of").

2

Based upon the holding of the Hawai'i Supreme Court,[3] the Trust terminated on November 9, 2004, when Joan Damon Haig, Damon's last surviving grandchild, died. In December 2004 and January 2005, roughly $704 million (more than 80 percent of the value of the trust on the day it terminated) was distributed to the Trust's beneficiaries.

During 2005, the Trustees continued to wind up the termination of the Trust. Among other actions taken in 2005,[4] the Trustees sold the Trust's Kamā'oa pasture lands on the Island of Hawai'i for approximately $3 million and an industrial parcel in San Leandro, California, for approximately $5.6 million and received $178,240 for access rights to a previously sold industrial parcel on Sand Island Access Road in Honolulu. The Trustees continued to oversee two investment accounts maintained by Goldman Sachs: (1) the so-called Per Stirpes account, valued at $230.6 million, which the Trustees held awaiting the outcome of litigation over where to set the stirpital root when distributing the remainder of Damon's estate, see In re Estate of Damon, 109 Hawai'i 502, 128 P.3d 815, reconsideration denied, 110 Hawai'i 281, 132 P.3d 390 (2006), cert. denied, Haig v. Damon, 549 U.S. 883, 127 S. Ct. 209 (2006), and (2) the "Reserve Pool," a portfolio of fixed-income securities intended to cover expenses incurred in the winding up of the estate.

Prior to petitioning the probate court for approval of the accounting, the Trustees met with some of the beneficiaries of the Trust on March 14, 2006. Attorney Jeffery Niebling (Niebling), who had been appointed by the probate court as the

_____

[3] In 1994, the Hawai'i Supreme Court instructed the Trustees that the trust was to terminate upon the death of the last survivor of Damon's three then-living grandchildren. Trust Created Under Will of Damon, 76 Hawai'i 120, 869 P.2d 1339 (1994).

[4] In 2005, the Trustees sold two notes receivable, authorized the auction of the Estate's coin collection, planned for the sale or other transfer of the Trust's Moanalua Valley property (including Moanalua Gardens) and the Kahuku Main Ranch Camp on the Island of Hawai'i, and prepared for the donation of artifacts to the Bishop Museum and Iolani Palace. Haig does not challenge these actions on appeal.

pre-petition master, Haig, and Haig's advisers were among those who attended the meeting.

On May 12, 2006, the Trustees petitioned the probate court for approval of the 2005 Report. On May 22, 2006, Niebling was again appointed Master to examine and report on the Petition.

On July 26, 2006, Niebling filed his report on the Petition (Master's Report) with the probate court. Niebling stated that to the best of his knowledge, no response or objection to the Petition had been filed. Niebling recommended, among other things, that the probate court approve the Trustees' accountings, Trust Termination Status Report, and some principal distributions, which had been made on January 31, 2006. Niebling also recommended that the probate court instruct the Trustees to transfer to Haig's personal account the money held in an FBO account in Haig's name.

On August 7, 2006, Haig filed his "Response and Exceptions to Report of Master on Petition for Approval of 2005 Income and Principal Accounts and Trust Termination Status Report" (Response to the Master). In addition to other claims not relevant on appeal, Haig alleged that the Master's Report was deficient because (1) it omitted "any review or opinion of the reasonableness and propriety" of three real estate transactions and (2) Niebling approved the securities portfolio management of approximately $383 million in investments without reviewing a report commissioned by the Trustees from Mercer Investment Consulting (the Mercer Report) or consulting another expert. Haig also asked the probate court to "designate, by written Order, that the objections made by [Haig] in paragraphs II.A, B, C, D.I, D.II and E, in [Haig's] Petition filed on 21 April 2006 are contested matters in accordance with Rule 19 of the Hawaii Rules of Probate Procedure"; assign the contested matters to the civil trial calendar; and designate that the Hawaiʻi Rules of Civil Procedure (HRCP) and the Rules of the Civil [sic] Courts apply to the contested matters.

The April 21, 2006 "Petition" referenced by Haig was not a petition, but rather a "Motion for Reconsideration of 1) Order Granting Petition for Approval of Post-Termination Distributions, Actions, and Plans, and 2) Order Granting the Remainder of the Petition For Approval of 2004 Income and Principal Accounts Excluding Post-Termination Distributions." The referenced paragraphs allege that the Trustees were liable for financial losses the Trust sustained when BancWest Corporation acquired First Hawaiian Inc. because the Trust owned a large block of First Hawaiian Inc. stock; the Trustees failed to obtain fair market value for two properties; and the then-Master James Kawachika (Kawachika) should have been disqualified because of multiple conflicts of interest.[5]  Following a June 9, 2006 hearing, the probate court denied this motion for reconsideration on August 16, 2006.  Haig filed an appeal from the denial, and this court dismissed the appeal because it had not been timely filed.  In re Estate of Damon, No. 28147 (App. Dec. 22, 2006).[6]

On August 15, 2006, the Trustees filed an objection to Haig's Response to the Master.  Niebling filed a response on August 17, 2006.[7]  Following a hearing on August 25, 2006, the probate court approved the 2005 Report and entered the Judgment on September 27, 2006.

---

[5] Haig had challenged Kawachika's impartiality in an earlier lawsuit. The Hawaiʻi Supreme Court agreed with Haig, holding that Kawachika, who was employed by the law firm representing the Trustees in two lawsuits, had a conflict of interest that should have precluded him from serving as Master in reviewing the 1999-2003 accountings.  In re Estate of Damon, 119 Hawaiʻi 500, 199 P.3d 89 (2008) (hereinafter, Damon I).

[6] Haig also appealed the probate court's approval of the 2006 accounting and Trust Termination Status Report, and the ICA again dismissed the appeal because Haig failed to file his notice of appeal by the deadline. In re Estate of Damon, No. 29049, 2008 WL 2955826 (Hawaiʻi App. July 29, 2008).

[7] Although the Master's Response appears in Volume 24 at page 64 of Probate No. 6664, it is not listed on the computerized index to Volume 24; it is listed in the index for Equity No. 2816-A.

Haig filed the Petition for Reconsideration on October 9, 2006. The probate court held a hearing on December 22, 2006. However, the probate court failed to file an order granting or denying the motion within 90 days after the October 9, 2006 filing date. Therefore, under HRAP Rule 4(a)(3), Haig's Petition for Reconsideration was deemed denied on January 8, 2007.[8]

Haig timely appealed.

## II. STANDARDS OF REVIEW

To the extent that a court adopts the findings of a master, the findings are considered the findings of the court. Hawaii Ventures, LLC v. Otaka, Inc., 114 Hawai'i 438, 456, 164 P.3d 696, 714 (2007) (citing to HRCP Rule 52(a) (2007)). A master's factual findings are reviewed under the clearly erroneous standard, with deference to the "superior position" of the master "to consider credibility and to draw inferences from the testimonial evidence." Hawaii Ventures, 114 Hawai'i at 456, 164 P.3d at 714 (internal quotation marks and citation omitted). A master's "conclusions of law, however, are not entitled to any special weight." Id. at 457, 164 P.3d at 715. To the extent that a master's conclusions of law are adopted by the circuit court, they are treated as the conclusions of the circuit court and are freely reviewed for their correctness, applying the right/wrong standard. Id.

The appellate court reviews a "trial court's ruling on a motion for reconsideration . . . under the abuse of discretion standard." Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd., 100 Hawai'i 97, 110, 58 P.3d 608, 621 (2002). An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party

---

[8] The probate court entered a written order on January 24, 2007 denying Haig's Petition for Reconsideration.

litigant." <u>Amfac, Inc. v. Waikiki Beachcomber Inv. Co.</u>, 74 Haw. 85, 114, 839 P.2d 10, 26 (1992).

## III.  DISCUSSION

### A.  HAIG OFFERS NO SUPPORT FOR HIS CLAIMS OF NONFEASANCE BY NIEBLING AND BREACH OF FIDUCIARY DUTY BY THE TRUSTEES.

Haig's primary point on appeal is that the probate court erred in granting the Trustees' Petition.  Haig did not file any objection or response to the Petition itself, but rather filed his Response to the Master.  The Trustees contend that Haig's argument should be disregarded because Haig did not oppose the Petition, as required under Hawai'i Probate Rules (HPR) Rule 3(b), and therefore could not point to "where in the record the alleged error was objected to," as required under HRAP Rule 28(b)(4).

While noncompliance with HRAP Rule 28(b)(4) is sufficient cause to deny a point of error, the appellate courts have a policy of "affording litigants the opportunity to have their cases heard on the merits, where possible." <u>Damon I</u>, 119 Hawai'i at 505, 199 P.3d at 94 (internal quotation marks and citation omitted).  Given this policy and the fact that it is possible to discern Haig's points of error, we address his argument below.  <u>See</u> <u>Lesser v. Boughey</u>, 88 Hawai'i 260, 261 n.1, 965 P.2d 802, 803 n.1 (1998).

The issue here is whether we should disregard this point of error, given that Haig's complaints below are styled as a "response and exception" to the Master's Report, rather than as an "objection" to the Trustees' Petition.

In 2006, HPR Rule 3(b) provided that "[o]pposition to any or all of the relief prayed for in a petition or to a master's . . . report shall be in the form of a written objection."  The probate rules then in effect also allowed

parties to submit a "response" to petitions or master's reports.[9] HPR Rule 3(a) (2006). The rules committee had considered combining the concepts of "objection" and "response," but instead kept the distinction because it "felt that an objection is clearly and unequivocally in opposition to a pleading, while a response may not necessarily oppose all relief requested in a petition, and could raise additional issues related to the petition." HPR Rule 3(a) cmt. Furthermore, HPR Rule 3(c) (2006) and its Commentary call for petitions to be "construed liberally" so as to "dispose of matters quickly without delay caused by failure to follow technical rules of pleading."

Considering the intent of the HPR to construe pleadings broadly, the complaints in Haig's Response to the Master can be fairly read as opposition to the Trustees' Petition. Haig's Response to the Master both opposes relief requested in the Petition and raises related issues (e.g., Haig questions why the Trustees selected a particular real estate broker for the Kahuku Ranch sale instead of one previously retained for other sales). Although this court has dismissed claims not properly raised below under the reasoning that it would be "unfair to the opposing party, who might have met the argument not made below," Royal Kunia Cmty. Ass'n ex rel. Bd. of Dirs. v. Nemoto, 119 Hawai‘i 437, 446, 198 P.3d 700, 709 (App. 2008) (quoting Price v. AIG Hawai‘i Ins. Co., 107 Hawai‘i 106, 111, 111 P.3d 1, 6 (2005)), that concern is not applicable here. Both the Trustees and Niebling replied to Haig's Response to the Master: Trustees did so by filing an "objection" on August 15, 2006, and Niebling filed a "response" on August 17, 2006. See Damon I, 119 Hawai‘i at 511 n.10, 199 P.3d at 100 n.10 (Hawai‘i Supreme Court concluding that Damon Trustees and Master rebutted Haig's argument when they replied to Haig's "responses" to the master's report).

_____

[9] The Commentary to HPR Rule 3(a) stated that a response to a petition or a master's report "should state in its title clearly to what other pleading it is responding."

### 1.    Errors alleged against Niebling

The few specific complaints in Haig's Opening Brief speak largely to the conduct of Niebling and the probate court's unconditional approval of the Master's Report. Haig contends "[t]he Probate Court did not make a meaningful review of the Master's Report before the Probate Court adopted Master's Report." Haig, however, does not cite as a point of error the probate court's approval and adoption of the Master's Report -- thereby violating HRAP 28(b)(4)(ii), which requires that Haig's opening brief point to "where in the record the alleged error occurred." Nevertheless, deferring to the policy of reviewing cases on the merits when possible, Damon I, 119 Hawai'i at 505, 199 P.3d at 94, we address Haig's complaints.

Haig challenges the Master's Report on the ground that it omits "any review or opinion of the reasonableness and propriety" of three real property transactions conducted by the Trustees in 2005. In the Master's Report, Niebling concluded that he was "satisfied" that the Trustees' actions in regards to the Trust Termination Status Report, which included mention of the real property transactions, were "consistent with the faithful performance of their fiduciary duties." In Niebling's response to Haig's Response to the Master, Niebling noted that he had reviewed minutes of the 2005 Trustees' meetings where the Kamā'oa and San Leandro sales were discussed; the Agreements of Purchase and Sale for the properties; a "Counseling Study and Appraisal Report" of the Kamā'oa land dated May 17, 2004, and an update dated May 20, 2005; an appraisal of the San Leandro property dated April 3, 2002; other environmental assessments of the San Leandro property; and the conveyance and closing documents for both properties. In his response, Niebling concluded that the Trustees' actions regarding the two properties "have been reasonable and proper under the circumstances."

Additionally, Haig asserts, without support, that Niebling lacked the expertise to review the performance of Goldman Sachs as the investment manager of the Trust's securities

portfolios, valued at roughly $383 million, without reviewing the Mercer Report or consulting another expert. Haig offers no authority for his position that Niebling was required to review property appraisals and the Mercer Report or hire an outside expert with more specialized knowledge. Under HPR Rule 29 (2006) and the Commentary thereto, a master's role as "the eyes and ears of the court" requires him to review the trust's operations and grants him "unlimited access to the books and records of the fiduciary with respect to the trust or estate that are not protected by privilege, including minutes of all meetings." In the Master's Report, Niebling stated that he had access to the Trust's financial documents, meeting minutes, and staff. In Niebling's response to Haig's Response to the Master, Niebling stated that he had reviewed a previous Mercer Report; correspondence among Trustees, Mercer, and Goldman Sachs; and minutes of Trustees' meetings when actions were taken in response to previous recommendations from Mercer regarding the Trust's investments. The Mercer Report, which Haig implies the Trustees withheld, had not been completed at the time Niebling reviewed the Petition.[10]

Other than Haig's unsubstantiated allegations, there is no suggestion that Niebling performed his job in a less-than-diligent manner. Haig has failed to demonstrate that the probate court erred by adopting the Master's Report.

## 2. Errors alleged against the Trustees

Haig contends the Trustees have a duty to obtain the best price available for Trust property sold, implying that they

---

[10] According to Niebling, the updated Mercer Report was due on or about August 26, 2006 -- a month after the Master's Report was filed. At the December 22, 2006 hearing on Haig's Motion for Reconsideration, Haig's attorney complained that the Mercer Report still had not been produced. The Trustees did not offer an explanation for the delay. It bears noting that the Trustees hired Mercer to do periodic reviews of the Trust's investments, although the Trustees were under no statutory obligation or fiduciary duty to do so.

10

did not do so with the three real estate transactions in 2005.[11] Haig argues that the Trustees' approach in arriving at sales prices for the Kamāʻoa and San Leandro properties was inadequate because it lacked a "thorough investigation of local conditions," did not contain proper written appraisals or a study of comparable properties, and did not consider the "highest and best use" of the properties as required under appraisal industry best practice standards.

Contrary to Haig's assertion that he filed timely vigorous objections to the methodology and value of these sales, he did not raise the issues below. Haig challenged Niebling's review of the property sales, but not the Trustees' actions regarding the transactions. "As a general rule, if a party does not raise an argument at the circuit court level, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil cases." Hawaii Ventures, 114 Hawaiʻi at 500, 164 P.3d at 758 (internal quotation marks, citation, and brackets omitted); see also HRAP Rule 28(b)(4)(iii) and HRS § 641-2 (Supp. 2009).

Even if this court were to read Haig's Response to the Master broadly enough to deem Haig's claim regarding the properties' valuations properly preserved on appeal, Haig still must present evidence to overcome a "presumption of regularity and good faith" favoring the Trustees. In re Estate of Campbell, 42 Haw. 586, 607-08 (Haw. Terr. 1958) ("[T]he person questioning the trustees' action has the burden of producing evidence to overcome the presumption, and that, upon the production of such evidence, the trustees have the ultimate burden of establishing the regularity and good faith of the questioned action by a preponderance of evidence.").

---

[11] Haig offers no argument regarding the third transaction, which the Trustees claim was the release of funds from the 2004 sale of the Sand Island industrial property, which sale had been approved previously by the probate court.

It is presumed that the Trustees' methods for setting and accepting purchase prices for the properties were acceptable. Buttressing this presumption is the Master's Report conclusion that the Trustees' actions were "consistent with the faithful performance of their fiduciary duties." Given the presumption favoring the Trustees, "the inquiry that logically follows concerns the steps, if any, that the [appellant] took to overcome it." In re Estate of Campbell, 42 Haw. at 608. Haig's position altogether ignores the appraisals done on the Kamāʻoa and San Leandro properties in 2004 and 2002, respectively. Haig does not question the appraised values nor does he offer an independent appraiser's assessment. Haig provides no proof that the final purchase prices obtained by the Trustees fell below fair market value. As in Campbell, "there is nothing in the record of this case to overcome the presumption of regularity and good faith in favor of the trustees." 42 Haw. at 609.

**B.    HAIG'S CLAIM OF LACK OF DUE PROCESS IS WITHOUT MERIT.**

Haig contends the probate court failed "to either approve or deny [his] request for an evidentiary hearing or assignment of the matter to the civil trial court," thereby depriving him of his right to due process under the United States and Hawaiʻi Constitutions.

It appears that Haig's constitutional claim relates to a redaction in the Judgment, although the connection between the redaction and Haig's due process argument is unclear. Haig appears to interpret the redaction as the probate court's refusal "either to grant or to deny by written Order [Haig's] request for either a Circuit Court civil trial or a Probate Court evidentiary hearing" and therefore "a violation of the Probate Court's mandatory exercise of its jurisdiction."

Haig argues that the probate court's failure to respond to his request, as made in his Response to the Master, was a

violation of HPR Rules 19 (2006) and 20 (2006).[12]  While it is true that the probate court did not put the issues on the civil trial calendar, the probate court was not required to do so; the assignment of any issue designated as contested under HPR Rule 19 is at the probate court's discretion.  HPR Rule 20(a).  The probate court must have determined that it could handle Haig's claim "more efficiently and effectively" than the civil trials court.  See HPR Rule 20(b).  Haig offers nothing to show that the probate court abused its discretion by retaining jurisdiction over the case.

Further, Haig's argument that he has been denied an opportunity to be heard on the complaints he raised in Haig's Response to the Master is meritless.  On August 25, 2006, the probate court held a hearing on the Trustees' Petition.  Haig had the opportunity to present and prove his complaints at that hearing.  Therefore, Haig's due process claim is without merit.

C.  **HAIG WAIVES POINTS OF ERROR RELATED TO THE PROBATE COURT'S INSTRUCTION TO DISBURSE FUNDS FROM HAIG'S FBO ACCOUNT AND HIS MOTION FOR RECONSIDERATION.**

Haig cites as error the probate court's instruction that the Trustees release funds held in a FBO account in Haig's name.  Haig provides no argument on this point in his Opening or Reply Briefs.  Haig also provides no argument as to how the probate court abused its discretion in denying his motion for reconsideration.  An opening brief before this court must include "[t]he argument, containing the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on."

_____

[12]  HPR Rule 19 defined a contested matter as "any one in which an objection has been filed."  The Commentary to the rule recognized that "a contested issue can be separated from the normal progress of the estate, guardianship, or trust, and dealt with separately" so that the remaining proceeding "is not completely put on hold because of a dispute about one issue."

HPR Rule 20 authorizes the Probate Court's retention or assignment to the civil trials calendar of contested matters.

HRAP Rule 28(b)(7). Haig provides none of these, so accordingly, these points are deemed waived.

## IV. CONCLUSION

The "Judgment on Order Granting Petition for Approval of 2005 Income and Principal Accounts and Trust Termination Status Report" filed on September 27, 2006, and the deemed denial, pursuant to Hawaiʻi Rules of Appellate Procedure Rule 4(a)(3), of the "Petition for Reconsideration of and Relief from: 1) Order Granting Petition for Approval of 2005 Income and Principal Accounts and Trust Termination Status Report, filed on 27 Sep 2006 and 2) Judgment on Order Granting Petition for Approval of 2005 Income and Principal Accounts and Trust Termination Status Report, filed 27 Sep 2006 and 3) Notice of Entry of Judgment on Order Granting Petition for Approval of 2005 Income and Principal Accounts and Trust Termination Status Report, filed on 28 Sep 2006" filed on October 9, 2006, in the Circuit Court of the First Circuit are affirmed.

DATED: Honolulu, Hawaiʻi, February 18, 2011.

On the briefs:

Frederick G. Riecker
John L. McDermott
for Respondent-Appellant
Christopher James Damon Haig.

J. Thomas Van Winkle
Katherine G. Leonard
Melissa H. Lambert
(Carlsmith Ball LLP)
for Petitioners-Appellees
The Trustees of the Estate
of Samuel M. Damon, Deceased.

Chief Judge

Associate Judge

Associate Judge